James H. WRIGHT, Edward F. Padilla, Carlos Perez, Glen G. Ocana, Vincenta Herrera, Juan Herrera, Amentu Rashu, Norman L. Archuleta, Sony N. Okara, Richard S. Tresco, and Laurie Ann Sailas, Plaintiffs,

v.

U–LET–US SKYCAP SERVICES, INC., a Colorado Corporation, Defendant.

Civ. A. No. 83–K–1374.

United States District Court,
D. Colorado.

Nov. 10, 1986.

As Amended Dec. 1, 1986.

Thomas B. Buescher, Brauer & Buescher, Denver, Colo., for plaintiffs.

Stephen C. Peters, Sherman & Howard, Denver, Colo., for defendant.

### MEMORANDUM OPINION AND ORDER

KANE, District Judge.

Final judgment in this case was entered on August 9, 1985. All issues were disposed of at that time except for the application of attorney fees and costs. The case is now before me for final determination of that issue. The final order is for defendant to pay plaintiffs' attorney fees and costs in the amount of $57,876.35. My findings of fact and conclusions of law follow.

### I.

### BACKGROUND

On August 2, 1983, plaintiffs filed a complaint in this case alleging defendant violated the minimum wage and record-keeping requirements of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq.*, when it employed plaintiffs as skycaps and electric cart operators at Stapleton International Airport. Defendant paid plaintiffs their wages pursuant to a "tip agreement" whereby plaintiffs had to turn in all monies received in tips and be reimbursed just up to the amount that would equal the

minimum wage of $3.35 an hour. This agreement was in blatant contravention of § 203(m) of the FSLA which limits the amount by which an employer can reduce its minimum wage obligation by treating employees' tips as wages. Plaintiffs sought damages for unpaid wages and interest, liquidated damages, and reasonable attorney fees and costs as provided in Section 16(b) of the Act, 29 U.S.C. § 216(b).

On July 24, 1985, I issued a memorandum opinion and order ruling on the parties' cross motions for summary judgment. I held, first, that plaintiffs were "tipped" employees within the meaning of the FLSA and thus could recover under that Act. I also ruled as a matter of law that the "tip agreements" between plaintiffs and defendant were invalid and unenforceable under § 201 and did not entitle defendant to claim tip credit in payment of wages to plaintiffs. I also granted plaintiffs' motion for summary judgment regarding the lack of notice to the plaintiffs regarding the FLSA provisions as required by § 203(m) of the Act. Next, I denied plaintiffs' summary judgment motion that the actions of defendant were "willfull", but only because this was a factual determination which required a jury for its disposition and thus could not be ruled upon by me pursuant to a summary judgment motion. I noted, however, the correct standard I would follow in determining the willfullness issue ("proof not required that defendant *intended* to violate the Act" *See Transworld Airlines, Inc. v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). Finally, I ruled for plaintiffs that no showing of willfullness is necessary before an award of attorney fees could be granted.

I then ordered an additional settlement conference in light of the disposition of the cross motions for summary judgment. The parties entered into stipulations for back-pay which would be due under both a two-year and three-year statute of limitations.

The case then went to trial on August 6, 1985.

At the conclusion of trial, it was determined that defendant had executed invalid tip agreements. Judgment was entered in favor of plaintiffs in the amount of $39,-901.31 for back pay wages due and owing, plus pre-judgment and post-judgment accrued interest. Defendant then filed bankruptcy under Chapter 7 of the United States Bankruptcy Act, 11 U.S.C. § 301, *et seq.* The United States Bankruptcy Court for the District of Colorado issued an "automatic stay" pursuant to 11 U.S.C. § 362 (an injunction prohibiting any act by any creditor to collect a debt—including court judgments the debtor may owe—in any fashion from the debtor or the debtor's property). The stay, however, has been lifted solely for the purposes of liquidating the application for attorney fees and costs.

## II.

## ATTORNEY FEES AND COSTS REQUESTED

■ Whether to award attorney fees pursuant to violations of the Fair Labor Standards Act is not a matter left to discretion. Payment of attorney fees and costs to a prevailing party in an FLSA action is *mandatory*. Section 16(b) of the Act provides, in pertinent part:

The court in such actions *shall*, in addition to any judgment awarded to the Plaintiff or Plaintiffs, allow a reasonable attorney's fee to be paid by defendant and costs of the action.[1] (emphasis added).

A court has no discretion to determine whether to award fees and costs. Discretion applies only to the amount and the reasonableness of the fee. *Birbalas v. Cuneo Printing Industries, Inc.*, 140 F.2d 826 (7th Cir.1944); *Wright v. Carrigg*, 275 F.2d 448 (4th Cir.1960); *Row v. Darling's Drug Store, Inc.*, 388 F.Supp. 877 (D.Pa. 1975).

---

**1.** Compare Title 42 U.S.C. § 1988 which provides that, in civil rights actions the trial court may, *"in its discretion, ...* allow the prevailing party ... a reasonable attorney's fee as part of the costs." (emphasis added).

On August 19, 1985, plaintiffs filed a bill of costs outlining their costs and attorney fees (with documentation) pursuant to the judgment entered on August 9, 1985. According to the affidavit submitted by plaintiffs' counsel, Kristin A. Kutz, plaintiffs incurred, through August 1, 1985, costs of $4,199.98, and attorney fees for prosecuting the action of $82,889.00.

On October 17, 1986, I issued a minute order requiring plaintiffs' bill of costs to be more detailed showing the number of hours, hourly rate, and total fees charged for each attorney who worked on the case. The following table reflects plaintiffs' attorney fees and costs.

### ATTORNEY FEES REQUESTED

| | HOURS | | HOURLY RATE | | TOTAL FEE |
|---|---|---|---|---|---|
| Mark N. Simons | 56.1 | × | $85.00 | = | $ 4,768.50 |
| Thomas B. Buescher [2] | 36.5 | × | ( 5.3 hrs. @ $85.00 | = | $ 450.50) |
| ( p1 5.3 hrs.) | | | ( 31.2 hrs. @ $100.00 | = | $ 3,120.00) |
| ( p2 31.2 hrs.) | | | | | $ 3,570.50 |
| ( 36.5 hrs.) | | | | | |
| | | | | = | $ 3,570.50 |
| Joseph Goldhammer | 0.5 | × | $80.00 | = | $ . 40.00 |
| Ellen M. Kelman | 0.7 | × | $75.00 | = | $ 52.50 |
| Kristen Kutz | 523.4 | × | ( 90.6 hrs. @ $60.00 | = | $ 5,436.00) |
| ( p1 90.6 hrs.) | | | (110.7 hrs. @ $65.00 | = | $ 7,195.50) |
| ( p2 110.7 hrs.) | | | (322.1 hrs. @ $100.00 | = | $32,210.00) |
| ( p3 322.1 hrs.) | | | | | $44,841.50 |
| 523.4 hrs. | | | | | |
| | | | | = | $44,841.50 |
| Patricia Coan [3] | 25.7 | × | ( 24.2 hrs. @ $65.00 | = | $ 1,573.00) |
| ( p1 24.2 hrs.) | | | ( 1.5 hrs. @ $100.00 | = | $ 150.00) |
| ( p2 1.5 hrs.) | | | | | $ 1,723.00 |
| 25.7 hrs. | | | | | |
| | | | | = | $ 1,723.00 |
| Phyliss Quinn (paralegal) | 531.4 | × | ( 87.9 hrs. @ $25.00 | = | $ 2,197.50) |
| ( p1 87.9 hrs.) | | | (294.5 hrs. @ $30.00 | = | $ 8,835.00) |
| ( p2 294.5 hrs.) | | | (149.0 hrs. @ $35.00 | = | $ 5,215.00) |
| ( p3 149.0 hrs.) | | | | | $16,247.50 |
| ( 531.4 hrs.) | | | | | |
| | | | | = | $16,247.50 |
| | | Total Attorney Fees Requested | | | $71,243.50 |

**2.** Some of the attorneys' hours are categorized into specific time periods. The following table represents those time periods:

| | 2/1/83 | 4/4/83 | 10/10/83 | 2/1/84 | 7/1/84 | 2/1/85 | 8/1/85 |
|---|---|---|---|---|---|---|---|
| Mark N. Simons | * | | | period 1 | | ** period 2 * | |
| Thomas B. Buescher | | | period 1 | | ** period 2 ** | period 3 * | |
| Joseph Goldhammer | | | period 1 | | ** period 2 ** | period 3 * | |
| Ellen M. Kelman | * | | period 1 | | ** period 2 ** | period 3 * | |
| Kristen Kutz | * | | | | *p. 1 **p. 2 ** | period 3 * | |
| Patricia Coan | * | | | * | period 1 ** | period 3 * | |
| Phyliss Quinn (paralegal) | * | | | * period 1 * ** | period 2 ** | period 3 * | |

The hourly rates for each of these periods is different for each attorney. The rates for the first two periods of all attorneys are generally lower than what defendant argues is a reasonable fee. The third period rates are generally much higher than what defendant argues is a reasonable hourly rate. Although reductions in the hourly rates shall be made, different rates shall still apply to different time periods. This is the reason I must keep track of how many hours must be reduced from each of the time periods. Recall, the final calculation of fees will be the amount of reasonable hours multiplied by a reasonable hourly rate.

**3.** Plaintiffs' attorneys erred in this calculation.

COSTS REQUESTED

| | |
|---|---|
| Court Costs (filing, clerk fees, etc.) | $ 72.00 |
| Witness Fees | $ 150.00 |
| Copying, Duplications | $ 994.48 |
| Depositions | $ 2,789.00 |
| Telephone, Deliveries, Postage, etc. | $ 192.87 |
| Total Costs Requested | $ 4,199.98 |
| Total Attorney Fees and Costs Requested | $75,456.48 |

---

## III.

### DEFENDANT'S OBJECTIONS

Defendant does not object to the amount of costs ($4,199.35) submitted by plaintiffs. After reviewing those costs and the verifying documentation, I find them reasonable. Thus, it is ordered that defendant pay to plaintiffs $4,199.35 in costs.[4] Defendant objects to the amount submitted for attorney fees, however, and claims the $82,-889.00 figure originally submitted by plaintiffs, and now, the $71,243.50 amended figure, should be reduced to $5,163.24.

Defendant first argues plaintiffs are not the "prevailing parties" in this litigation. Alternatively, to the extent plaintiffs did recover damages, defendant requests the attorney fees award should be reduced in order to comport with that amount. Under the terms of the statute, it must first be determined whether the party seeking fees is the "prevailing party" and, if so, to what extent success was "limited." If that requirement is satisfied, then the court must carefully examine the request for fees to determine whether the number of hours and the hourly rate are reasonable.

### A. PREVAILING PARTY

1. *Definition.*

██ As a threshold determination, then, I must decide if plaintiffs are the prevailing

parties in this litigation. Generally, plaintiffs "may be considered 'prevailing parties' for attorney's fees purposes if they succeed on any significant issue in the litigation which achieves some of the benefit the parties sought in bringing the suit." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983) (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 278–79 (1st Cir.1978)). Equally important, fees should be awarded to a plaintiff who is only partially successful, especially "where a party has prevailed on an important matter in the course of the litigation, even when he ultimately does not prevail on all issues." S.Rep. No. 94–1011, 94th Cong., 2nd Sess., *reprinted in* 1976 U.S. Code Cong. & Ad.News 5908, 5912; *see also Supre v. Ricketts*, 596 F.Supp. 1532 (D.Colo.1984). Once the plaintiff has been determined to have obtained some of the benefits sought in bringing the litigation, the plaintiff should be construed to be the prevailing party. *Battle v. Anderson*, 614 F.2d 251, 258 (10th Cir.1980).

██ In the instant case, there is no question that plaintiffs are the prevailing parties. Defendant argues plaintiffs were not the prevailing parties because plaintiffs "only" recovered 48 percent of their "potential" recovery had every single one of their legal claims and theories been correct. This "test" is inappropriate given the Supreme Court case of *Hensley v. Eckerhart*, *supra*, and the Tenth Circuit case law cited above. Plaintiffs prevailed on the issue of

---

They stated 24.2 × $65.00 = $1586.00 which is incorrect. Actually, 24.2 × $65.00 = $1573.00.

**4.** Plaintiffs' attorneys also erred in this calculation. The correct sum is $4,199.35, not $4,199.98.

whether the tip agreements were invalid and received a judgment for backpay in the substantial amount of nearly $40,000.00 pursuant to that judgment. This was *the* significant issue in this action. It is true, as defendant states, that a finding of "willfullness" on the part of defendant would have increased the damage award, but this was not the significant issue in this litigation. Similarly, an application of a three-year statute of limitations rather than a two-year statute of limitations (two-year statute of limitations because there was no finding of "willfullness") would have increased the damage award but that was not the significant issue either. Indeed, the statute of limitations issue, in and of itself, is indicative of how plaintiffs prevailed on the merits and how defendant was merely trying to *minimize the damages.* Plaintiffs have vindicated their claims successfully. Accordingly, plaintiffs are entitled to attorney fees as the "prevailing parties."

2. *Limited Success.*

■ A secondary matter relating to the concept of a "prevailing party" is how much, if at all, a request for attorney fees should be reduced in order to comport with the success of the ultimate damage award. A downward adjustment of the "lodestar" figure may be required when the party being awarded fees has achieved only "limited success." *Hensley*, 461 U.S. at 436, 103 S.Ct. at 1941. In other words, the court should not award more than the amount that is "reasonable in relation to the results obtained." *Id.* at 440, 103 S.Ct. at 1943.

While plaintiffs' success was substantial in this case, I cannot overlook the fact that it was not complete. Nor can I term the results as "excellent" given the fact that plaintiffs did not prevail on certain issues, even though those issues were minor in the context of the entire case. Thus, some reduction is appropriate.

As the Supreme Court recognized in *Hensley*, "[t]here is no precise rule or formula for making ... [such a reduction]." 461 U.S. 424, 436, 103 S.Ct. 1933, 1941. There are two approaches, however, to making that determination. First, "[t]he district court may attempt to identify specific hours that should be eliminated...." *Hensley*, 461 U.S. 424, 436, 103 S.Ct. 1933, 1941. This approach seems to be favored by the Tenth Circuit: "[w]ith appropriate time records we think the court will not have much difficulty determining how much time was spent on unrelated claims for which no compensation may be awarded." *Ramos v. Lamm*, 713 F.2d 546, 556 (1983). The second approach is "simply [to] reduce the award to account for the limited success." *Hensley*, 461 U.S. 424, 436–37, 103 S.Ct. 1933, 1941–42.

The first approach is better suited to the circumstances of this case. Accordingly, I have reduced the number of hours where specific time entries relate to the claims upon which plaintiffs failed to obtain compensation. The following table demonstrates the time reductions with respect to the hours which should be eliminated because they were "spent on unrelated claims for which no compensation may be awarded" (the "willfullness" determination):

| | HOURS REQUESTED | | HOURS DEDUCTED | | FIRST SET OF ADJUSTED TOTAL HOURS[5] |
|---|---|---|---|---|---|
| Mark N. Simons | 56.1 | – | 0.0 | = | 56.1 |
| Thomas B. Buescher | 36.5 [6] | – | 5.0 | = | 31.5 |

**5.** The "First Set of Adjusted Total Hours" category lists the resulting amount of hours I calculated after deleting the hours pertaining to the willfullness issue which plaintiffs failed to prove at trial and thus did not obtain the additional compensation they would have otherwise received.

**6.** Although attorney Thomas Buescher's work spanned two time periods for which he request-

| | HOURS REQUESTED | | HOURS DEDUCTED | | FIRST SET OF ADJUSTED TOTAL HOURS[5] |
|---|---|---|---|---|---|
| Joseph Goldhammer | 0.5 | – | 0.0 | = | 0.5 |
| Ellen M. Kelman | 0.7 | – | 0.0 | = | 0.7 |
| Kristen Kutz | 523.4 | – | 34.6 | = | 488.8 |
| | (p1 90.6 | – | p1 1.9 | = | p1 88.7 ) |
| | (p2 110.7 | – | p2 9.6 | = | p2 101.1 ) |
| | (p3 322.1 | – | p3 23.1 | = | p3 299 ) |
| Patricia Coan | 25.7 | – | 5.6 | = | 20.1 |
| | (p1 24.2 | – | p1 5.6 | = | 18.6 ) |
| | (p2 1.5 | – | p2 0.0 | = | 1.5 ) |
| Phyliss Quinn (paralegal) | 531.4 | – | 4.7 | = | 526.7 |
| | (p1 87.9 | – | p1 0.0 | = | 87.9 ) |
| | (p2 294.5 | – | p2 0.2 | = | 294.3 ) |
| | (p3 149 | – | p3 4.5 | = | 144.5 ) |

These are but the first reductions in hours to be executed in this case. The determination that plaintiffs are the prevailing parties only brings them across the "statutory threshold." *Hensley,* 461 U.S. 424, 433, 103 S.Ct. 1933, 1939. After adjusting the hours to comport with the "limited success", I must then turn to the more difficult task of deciding what fee is reasonable. *Id.*

## B. REASONABLENESS OF FEES

"The most useful starting point for determining the amount of a reasonable fee is the number of hours and the hourly rate." *Hensley,* 461 U.S. at 433, 103 S.Ct. at 1939; *see also Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); *Ramos v. Lamm,* 713 F.2d 546, 552 (10th Cir.1983). It follows that "[t]he first step in calculating fee awards is to determine the number of hours reasonably spent by counsel for the party seeking the fees." *Ramos, supra,* at 553.

### 1. *Hours Reasonably Expended.*

Defendant asserts plaintiffs have made absolutely no effort to satisfy their burden of establishing that the hours expended in pursuit of their claims were reasonable. Defendant further asserts plaintiffs' counsel has made no stated good faith effort to eliminate such hours for the application for fees. Defendant also states plaintiffs have submitted no memorandum or brief in support of their request, and rest solely upon the affidavits of Kristin A. Kutz and Thomas Beuscher which merely list the total number of hours expended by each of plaintiffs' counsel and their differing hourly rates over various time periods.

These broad and general assertions set forth by defendant prove nothing nor do they advance any discernible argument. The statements merely remind me of what I already know to be my responsibility in allocating the burden of proof. Plaintiffs' time entries have accompanying explanatory notes which must carry the burden of proof in establishing reasonableness. I must consider them carefully. Although a brief or memorandum submitted by plaintiffs' counsel may have been helpful, lack thereof does not necessarily mean plaintiffs fail to carry their burden of proof. Thus, defendant's contention in this regard does nothing to advance this analysis.

The Tenth Circuit has set forth five general standards for a district court to consid-

ed differing hourly rates ($85.00 per hour and $100.00 per hour, respectively), I have deemed one rate to be applicable for all his work, thus, a breakdown of hours according to specific time periods is unnecessary.

er when examining each time entry. *See Ramos v. Lamm, supra.* Paraphrasing the Tenth Circuit, these general standards require me to: (1) give special scrutiny to time entries exceeding six to seven hours for a single attorney on any given day, (2) give special scrutiny to each specific task which may appear excessive, (3) determine whether the tasks sought to be charged to the adverse party would normally be billed to a paying client, (4) deny compensation for duplication of services, and (5) deny compensation for "non-productive" time, or time spent on matters not necessary or related to the case at hand.

I have reviewed the fee applications and defendant's memorandum in opposition to these applications and have carefully examined every time entry with the Tenth Circuit's instructions in mind. Generally, I find the time expenditures in this case have been fairly reasonable. There are some exceptions, however, and defendant has pointed out many of them. Those exceptions follow.

### UNREASONABLE HOURS

■ Defendant asserts some of the work of attorney Mark Simons could not possibly have been utilized for the benefit of plaintiffs' claims. For example, on March 19, 1984, he lists 7.5 hours for "attending deposition" but does not specify whose deposition he attended. He also states the time spent was for "preparation for deposition of J. Herrera and C. Perez" but does not make any subsequent entry for attending the depositions. Also, I find the "review and analysis" entries excessive. In all, his hours are reduced by 13.3 hours.

Defendant also objects to plaintiffs' inefficient "overstaffing" of the case with six lawyers and a paralegal. Defendant therefore requests the time spent in this case by lawyers Beuscher, Goldhammer, and Kelman be stricken in their entirety for their redundancy.

Mr. Goldhammer and Mr. Kelman have but one entry each and both were mere "discussions" with other co-counsel for less than one hour, and one-half-hour, respec-

tively. It would take that much time simply to familiarize these attorneys with the case much less obtain any "hard" legal analysis from them. Both of their entries are therefore stricken, resulting in a reduction of 1.2 hours.

Mr. Beuscher's entries contain redundant time. His time, however, will not be stricken in its entirety. Defendant notes Mr. Beuscher conducted no discovery, prepared no motions, and presented none of the plaintiffs' case at trial. Although he handled the settlement conferences, defendant asserts he participated in the conferences principally to advise against settlement and therefore accomplished nothing for his clients which could reasonably be billed to them.

■ Defendant, however, ignores the fact that by never agreeing to accept defendant's highest settlement offer of $20,-000.00, Mr. Beuscher preserved plaintiffs' action and thereby allowed plaintiffs to recover a $39,901.31 judgment. As a rejoinder, defendant argues that even though plaintiffs recovered almost twice as much as the settlement offer they refused, "it does not appear that they will actually collect as much as $20,000.00 during the distribution in bankruptcy" (Recall, defendant has filed bankruptcy). What is omitted, however, is that defendant filed bankruptcy *after* the judgment was entered. It is absurd to expect plaintiffs' counsel to speculate correctly on whether defendant will file bankruptcy *if* a favorable judgment is rendered. Mr. Beuscher's time is reduced only to the extent some of his entries are redundant such as his numerous conferences which lack sufficient explanations. Mr. Beuscher's hours are reduced by 7.9 hours.

Next, defendant asserts the hours spent by Ms. Patricia Coan should be reduced by 15.7 hours for redundant tasks. I find her conferences excessive, her "proofreading [internal] memoranda" non-billable, and research memoranda partially redundant or unnecessary. I therefore reduce her time entries by 6.6 hours.

Most of defendant's objections relate to the time entries of Ms. Kutz, the lead attorney for plaintiffs. Ms. Kutz' time entries span 18 pages and total 523.4 hours. As with the other attorneys, defendant sets forth numerous objections as examples of the overall unreasonable and excessive hours.

Most of the hours to be reduced are those related to redundant entries and the time Ms. Kutz spent reaquainting herself with the case after an illness. For example, she spent more time preparing for depositions than actually taking the depositions and filed identical daily entries on various occasions. Most significantly, however, she spent an excessive number of hours doing research. Every motion does not require that she begin her research anew and thus, reinvent the proverbial wheel. Such duplicative research is not reasonable time for billing purposes. Pursuant to the guidelines set forth by the Tenth Circuit, I find Ms. Kutz' time excessive and redundant in several instances. Her time is reduced by 62.9 hours.

Finally, defendant objects to the hours spent by plaintiffs' legal assistant, Phyllis J. Quinn. Defendant correctly states insufficient explanations accompany both the telephone conference calls, and the intra office conferences. Such entries constitute much of the 24 pages of her time entries. Based on these insufficient entries and the entries exceeding six to seven hours on any one day with no special explanation, Phyllis Quinn's hours are reduced by 35 hours.

The following table reflects the reduction of hours which cannot reasonably be charged given the Tenth Circuit's criteria:

| | FIRST SET OF ADJUSTED TOTAL HOURS | | UNREASONABLE HOURS | | SECOND SET OF ADJUSTED TOTAL HOURS |
|---|---|---|---|---|---|
| Mark N. Simons | 56.1 | – | 13.3 | = | 42.8 |
| Thomas. B. Buescher | 31.5 | – | 7.9 | = | 23.6 |
| Joseph Goldhammer | 0.5 | – | 0.5 | = | 0.0 |
| Ellen M. Kelman | 0.7 | – | 0.7 | = | 0.0 |
| Kristen Kutz | 488.8 | – | 62.9 | = | 425.9 |
| | (p1 88.7 | – | 4.8 | = | 83.9 ) |
| | (p2 101.1 | – | 20.3 | = | 80.8 ) |
| | (p3 299 | – | 37.8 | = | 261 2 ) |
| Patricia Coan | 20.1 | – | 6.6 | = | 13.5 |
| | (p1 18.6 | – | 6.1 | = | 12.5 ) |
| | (p2 1.5 | – | 0.5 | = | 1 ) |
| Phyliss Quinn (paralegal) | 526.7 | – | 35 | = | 491.7 |
| | (p1 87.9 | – | 3.3 | = | 84.6 ) |
| | (p2 294.3 | – | 18.5 | = | 275.8 ) |
| | (p3 144.5 | – | 13.2 | = | 131.3 ) |

## 2. *Hourly Rate.*

Plaintiffs' attorneys originally calculated their fees at the rate of $100.00 an hour for all attorneys spanning all time periods. The only explanation to justify that amount was the assertion in the accompanying affidavit of Kristen A. Kutz which states "the [$100.00 hourly] rate [is] reasonable and [is] usual and customary for the kind of work involved." Upon receiving my Order to specify the attorneys' total hours and fees, plaintiffs' counsel took the liberty to adjust the hourly rates downward resulting in more than a $10,000.00 decrease from their original request. Plaintiffs' counsel submitted various rates for each attorney,

see table, *supra,* p. 6. As stated before, they requested three different hourly rates corresponding to three different time periods covering the work done in this case. The rates progressively increase with each successive chronological period. *See* Footnote 2, *supra.*

■ Defendant objects to the rates over $75.00 an hour and cites another attorney fees statute, the Equal Access to Justice Act, 28 U.S.C. § 2412, in which Congress has provided that reasonable attorney fees shall not exceed $75.00 an hour unless special factors justify a higher fee. 28 U.S.C. § 2412(d)(2). I find this argument to be without merit.

In *Martinez v. Shock Transfer and Warehouse Company, Inc.,* Slip. Op. 82–z–1564 (D.Colo.1984), the court applied the $75.00 rate limitation because the "case raised no novel or difficult questions, and did not require unusual skill." *Id.* at ——. With respect to this issue, however, the Tenth Circuit has stated that a trial court *must* consider

> what lawyers of comparable skill and experience practicing in the area would charge for their time. If the lawyer seeking the fee is in private practice, his or her customary rate would be a relevant but not conclusive factor. The hourly rate should be based on the lawyer's skill and experience in [the] litigation ... The quality of the lawyers performance in the case should also be considered in placing a value on his or her services.

*Ramos,* 713 F.2d 546, 553 (footnotes omitted). This, the procrustean demarcation of $75.00 per hour is contrary to established law.

As a preliminary matter, many of the rates requested are below the $75.00 ceiling for which defendant argues. Thus, these rates need not be adjusted because both parties essentially agree to their reasonableness. I do not find it necessary to award plaintiffs' counsel a higher hourly rate than that which they request. Also, Ms. Quinn's (paralegal) requested rates are equal to or below that which defendant asserts is reasonable, thus, since both sides once again find this a reasonable rate ($35.00 or below) and the rate meets what I deem to be standard practice, the rates shall remain as they are. The only points of contention, then, are with those attorney rate requests which exceed $75.00 per hour.

■ Lawyers of comparable skill and experience practicing in this area, on average, charge from $75.00 to $100.00 per hour. I deem $85.00 per hour to be a reasonable rate given the skill and experience of Kristen Kurtz and the quality of her performance in this case as the lead attorney. These special considerations justify a fee higher than $75.00 per hour. The other five attorneys working on behalf of plaintiffs, although their skill and experience were comparable, played a more limited role than Ms. Kurtz. Moreover, their contributions did not involve excessively difficult or novel legal work, thus, $80.00 an hour is a reasonable rate for their services given their limited role.

Accordingly, the hourly rates are adjusted as reflected in the following table:

| | RATES REQUESTED | ACTUAL ADJUSTED RATES |
|---|---|---|
| Mark N. Simons | $ 85.00 | $80.00 |
| Thomas B. Buescher | $ 85.00 | $80.00 |
| Joseph Goldhammer | $ 80.00 | Not Applicable |
| Ellen M. Kelman | $ 75.00 | Not Applicable |
| Kristen Kutz | $60.00/$65.00/$100.00 | $60.00/$65.00/$85.00 |
| Patricia Coan | $65.00/$100.00 | $65.00/$80.00 |

|  | RATES REQUESTED | ACTUAL ADJUSTED RATES |
|---|---|---|
| Phyliss Quinn (paralegal) | $25.00/$30.00/ $35.00 | $25.00/$30.00/ $35.00 (no adjustment) |

## IV. ATTORNEY FEES AWARDED

Making the deductions in the hours expended and the hourly rates as enumerated in the various tables above, Part II, *supra*, I conclude the following hours and hourly rate are reasonable:

|  | REASONABLE HOURS |  | REASONABLE HOURLY RATE |  | ATTORNEY'S FEES AWARD |
|---|---|---|---|---|---|
| Mark N. Simons | 42.8 | × | $80.00 | = | $ 3,424.00 |
| Thomas B. Buescher | 23.6 | × | $80.00 | = | $ 1,888.00 |
| Joseph Goldhammer | 0.0 | × | – | = | 0.00 |
| Ellen M. Kelman | 0.0 | × | – | = | 0.00 |
| Kristen Kutz | 425.9 | × |  | = |  |
|  | ( 83.9 | × | $60.00 | = | $ 5,034.00 ) |
|  | ( 80.8 | × | $65.00 | = | $ 5,252.00 ) |
|  | (261.2 | × | $85.00 | = | $22,202.00 ) |
|  |  |  |  |  | $32,488.00 |
|  |  |  |  | = | $32,488.00 |
| Patricia Coan | 13.5 | × |  | = |  |
|  | ( 12.5 | × | $65.00 | = | $ 812.50 ) |
|  | ( 1.0 | × | $80.00 | = | $ 80.00 ) |
|  |  |  |  |  | $ 892.50 |
|  |  |  |  | = | $ 892.50 |
| Phyliss Quinn (paralegal) | 491.7 | × |  | = |  |
|  | ( 84.6 | × | $25.00 | = | $ 2,115.00 ) |
|  | (275.8 | × | $30.00 | = | $ 8,274.00 ) |
|  | (131.3 | × | $35.00 | = | $ 4,595.50 ) |
|  |  |  |  |  | $14,984.50 |
|  |  |  |  | = | $14,984.50 |
|  | Total Attorney Fees Award |  |  |  | $53,677.00 |

IT IS THEREFORE ORDERED THAT:

1. Defendant pay plaintiffs' costs in the amount of $4,199.35.

2. Defendant pay plaintiffs' attorney fees in the amount of $53,677.00.