Robert L. GILLIAM, Tommy Mitchell and Carl L. Vann, Plaintiffs,

v.

MONTGOMERY WARD & CO., INC., Defendant.

Civil Action No. 2:94cv1006.

United States District Court, E.D. Virginia, Norfolk Division.

Jan. 8, 1996.

Thomas Francis Hennessy, III, SuAnne Leigh Hardee, Hardee & Hennessy, P.C., Chesapeake, VA, for plaintiffs.

Amy Moss Levy, William Edward Rachels, Jr., Willcox & Savage, Norfolk, VA, for defendant.

## MEMORANDUM OPINION AND ORDER

JACKSON, District Judge.

### INTRODUCTION

Plaintiff Mitchell moves this Court for an award of liquidated damages, attorneys' fees, and costs pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b) (1994). The issue of liquidated damages arises because the Court ruled as a matter of law that the position of Loss Prevention Manager ("LPM") in the stores of Defendant Montgomery Ward & Co., Inc. ("Montgomery Ward") is not exempt from the requirements of the FLSA to pay overtime compensation.[1] The Court held a hearing on November 8, 1995[2] on the issue of liquidated

damages to provide Defendant an opportunity to make a showing to avoid the award of liquidated damages. This matter is now ripe for judicial determination.

For the reasons that follow, the Court **GRANTS** Plaintiff Mitchell's motion for an award of liquidated damages, attorneys' fees, and costs.

### I. LEGAL STANDARDS

Plaintiff Mitchell moves the Court pursuant to 29 U.S.C. § 216(b) (1994) for an award of liquidated damages for Defendant's violation of § 207. Section 216(b) provides that any employer who violates § 207 is liable in the amount of the unpaid overtime compensation and in an additional equal amount as liquidated damages. The Court in its sound discretion, however, may award no liquidated damages or award any amount not exceeding the amount specified in § 216 "if the employer shows to the satisfaction of the court that the act or omission giving rise to ... [the unpaid overtime] was in good faith and that he had reasonable grounds for believing that his act or omission was not in violation of the Fair Labor Standards Act." 29 U.S.C. § 260 (1994). Section 260 requires the Court to conduct a two-pronged inquiry. The statute requires a showing of good faith, the subjective prong and reasonable belief, the objective prong. *See Burnley v. Short*, 730 F.2d 136, 140 (4th Cir.1984) (finding record amply showed innocent good faith belief but finding more problematical the evidence of reasonable belief, the objective prong). "The exception to the general rule of liquidated damages puts upon the employer the 'plain and substantial burden of persuading the court by proof that his failure to obey the statute was both in good faith and predicated upon such reasonable grounds that it would be unfair to impose him more than a compensatory verdict.'" *Id.* (quoting *Wright v. Car-*

---

1. The Court originally ruled on the issue of exemption on May 24, 1995, and denied Defendant's Renewed Motion for Judgment as a Matter of Law or in the Alternative a New Trial by order filed October 4, 1995.

2. At the beginning of the hearing, Defendant Montgomery Ward made an oral motion for a continuance because of the absence of one of its

witnesses. In denying this motion the Court noted the following factors: 1) the date of the hearing was chosen by the parties, not the Court, 2) the only reason given for the absence of the witness was that he needed to meet with his supervisor in Boston, MA, and 3) Defendant could have presented this evidence at trial.

*rigg*, 275 F.2d 448, 449 (4th Cir.1960)). The employer may not remain "blissfully ignorant" of the requirement of the FLSA and hope to avoid an award of liquidated damages. *Id.* (citations omitted). It must take some affirmative action to determine its liability under the Act. *Burgess v. Catawba County*, 805 F.Supp. 341, 350 (W.D.N.C.1992) (citing *Horan v. King County*, 740 F.Supp. 1471, 1481 (W.D.Wash.1990)).

█ Plaintiff Mitchell also moves the Court for an award of attorneys' fees and costs. An award of attorney's fees to individuals prevailing under the FLSA is mandatory; however, the amount of the award rests within the sound discretion of the trial court. *Burnley*, 730 F.2d at 141 (citation omitted). The Court must follow the standards adopted in *Barber v. Kimbrell's Inc.*, commonly known as the *Johnson* factors. 577 F.2d 216, 226 n. 28 (4th Cir.), *cert. denied*, 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978) (adopting *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). "Any award must be accompanied by detailed findings of fact with regard to the factors considered." *Barber*, 577 F.2d at 226. The *Johnson* factors are as follows: 1) the time and labor required, 2) the novelty and difficulty of the questions, 3) the skill requisite to perform the legal service properly, 4) the preclusion of other employment by the attorney due to acceptance of the case, 5) the customary fee, 6) whether the fee is fixed or contingent, 7) time limitations imposed by the client or the circumstances, 8) the amount involved and the results obtained, 9) the experience, reputation, and ability of the attorneys, 10) the "undesirability" of the case, 11) the nature and length of the professional relationship with the client, and 12) awards in similar cases.

*Johnson*, 488 F.2d at 717–19. There is no strict manner, however, in which the Court must consider or apply these factors. *Trimper v. Norfolk*, 846 F.Supp. 1295, 1303 (E.D.Va.1994), *aff'd*, 58 F.3d 68 (4th Cir.), *cert. denied*, — U.S. ——, 116 S.Ct. 535, 133 L.Ed.2d 440 (1995) (citing *E.E.O.C. v. Service News Co.*, 898 F.2d 958, 965 (4th Cir.1990)).

"Applying certain *Johnson* factors, the Court determines a reasonable hourly rate and the number of hours reasonably expended by counsel, then multiplies the rate by the hours in order to determine the 'lodestar figure,' which is normally considered the reasonable fee in the case." *Id.* at 1304 (citing *Service News Co.*, 898 F.2d at 965).

## II. DISCUSSION

### A. *Liquidated Damages*

Defendant Montgomery Ward presented two witnesses at the hearing to try to establish that the decision to classify the position of Loss Prevention Manager as exempt under the FLSA was in good faith and based upon reasonable grounds. The relevant witness was the Director of Compensation and Employee Benefits ("Director of Compensation") for Montgomery Ward. Generally, in making a determination concerning the status of a position under the FLSA, the Director of Compensation testified that he would review the job description, apply the regulations, and decide the proper classification. This witness testified that as a part of his professional certification he was required to complete a two- to three-day class on the FLSA and an examination following the class. He also testified that as a part of his job he reviews regulations, cases, and some BNA [3] publication(s) regarding the FLSA.

In addressing this specific determination, the Director of Compensation testified that he needed to obtain additional information beyond the written job description. More specifically, he needed to know, *inter alia*, the percentage of time spent on each responsibility or task described in the job description. He received this information from a human resources manager, who received information from the then Director of Loss Prevention, the highest position in loss prevention at the time. In gathering the information concerning the percentage of time spent on each task, the Director of Compensation testified that he received this information orally and did not reduce it to writing. The Director of Compensation testified that after receiving the information concerning

---

**3.** The Bureau of Nation Affairs, BNA, publishes a looseleaf topical compilation, a "service."

percentages, he consulted the regulations, the interpretative bulletin, and certain BNA publications.

The Court particularly notes several aspects of the Director of Compensation's decision-making process. The Director of Compensation testified that he did not have specific recollection of the percentages of time spent on each job function nor did he recall the specific regulations he considered. He did not make any notes regarding this information. He did not retain the documentation, if any, used in his review. However, after this review, the Director testified, there was "no question in his mind" that the position of LPM was exempt. The Director testified that he orally communicated his decision to the human resources manager. He did not circulate his decision in the form of a memorandum or any other inter-office communication nor did he generate a memorandum for his files which could have indicated to the Court his line of reasoning at the time.

In response to questioning on cross-examination and by the Court, the Director testified that he did not consult Department of Labor ("DOL") officials, case law, or available legal counsel within Montgomery Ward in making this determination; he did not seek legal review of any kind. *Compare Dalheim v. KDFW–TV,* 712 F.Supp. 533 (N.D.Tex.1989) (finding good faith and reasonable belief where company relied upon advice of labor law attorney with over 20 years of experience and research of at least four firm labor attorneys) *with Bankston v. Illinois,* 60 F.3d 1249 (7th Cir.1995) (finding bad faith where company ignored advice from legal staff that employees could not be exempt). He gathered information from a human resources manager, reviewed the job description, and determined on the basis of regulations, the interpretive bulletin, and some BNA publication(s) that the position of LPM was exempt. Counsel for Defendant suggested in closing argument that this process of review and the back-and-forth between the Director of Compensation and a human resources manager and the Director of Loss Prevention was tantamount to the studies which the court in *Hawks v. Newport News,* found to be evidence of good faith.

707 F.Supp. 212, 217 (E.D.Va.1988). In that case, the City of Newport News conducted a study of ranking positions in the fire department over a two-year period. The City followed the initial study with a second study to ensure that the positions at issue were exempt. The Court does not find that the actions taken by Defendant in this case rise to the level of the studies in *Hawks.*

Furthermore, the actions taken by Defendant are not analogous to the actions which other courts have found to be evidence of good faith or reasonable belief. Although Defendant's most recent memorandum argues that sufficient ambiguity existed in the regulations, several reasons militate against the Court finding this alleged ambiguity to be a basis of good faith or reasonable belief. *See Thomas v. Fairfax,* 758 F.Supp. 353, 368 (E.D.Va.1991) (finding that the ambiguity of the regulations and the closeness of question presented both argued that defendant had reasonable basis). First, the Director of Compensation testified that it was "clear" that the position was exempt. He did not testify to any ambiguity or the "closeness" of the question. Second, assuming *arguendo* that at the time of the determination of the status of the position in 1989 the regulations were ambiguous, Defendant has not conducted a formal review of the classification of the position since the review in 1989 as described by the Director of Compensation in his testimony. Although not dispositive of the good faith or reasonableness of Defendant's position at the time in question, Defendant's lack of attention to this matter in the ensuing years suggests an absence of good faith or reasonableness. Defendant cites *Burnley* to support its opposition to an award of liquidated damages. 730 F.2d 136 (4th Cir.1984). The Court notes, however, that unlike that case where the defendant "innocently believed" that the FLSA did not apply to his business and relied upon a trade newsletter and the business was transiently and marginally covered by the FLSA, Defendant Montgomery Ward had access to legal counsel both inside and outside of the company and was certain of the applicability of the FLSA to its business.

The Director of Compensation was the individual who ultimately decided whether a position is exempt. Not only did he not seek advice from Defendant's legal counsel, he did not consult the DOL or revisit the issue as the case law developed under the Act. In view of Defendant's failure to avail itself of these resources and its lack of documentation of its decision-making process, the Court does not find that it has carried its burden of establishing good faith or reasonable belief that its actions were in compliance with the Act. *See Armitage v. Emporia,* 782 F.Supp. 537 (D.Kan.), *rev'd on other grounds,* 982 F.2d 430 (10th Cir.1992) (awarding liquidated damages where city did not seek advice of legal counsel or appropriate government agency, did not read available government literature, and made a single telephone call to DOL without receiving confirmation of its position). Consequently, the Court **GRANTS** Plaintiff Mitchell's motion for award of liquidated damages in the amount of $22,852.80 which equals the amount of relief awarded on June 16, 1995 for unpaid overtime compensation.

### B. *Attorney's Fees*

Plaintiff Mitchell seeks to recover $9,792.00 in attorneys' fees. In support of this motion, Plaintiff submitted several affidavits detailing the tasks performed, the time expended on each task, and the hourly rates of the two attorneys and their paralegal. Plaintiff also submitted two affidavits of local attorneys practicing in labor and employment law to establish the reasonableness of the requested fees. One affiant has practiced for twelve years, eight of which were spent exclusively in labor law. (Summers Aff. ¶¶ 1, 4.) Her standard hourly rate for litigation is $150.00 and the rate charged to clients of her firm for paralegal time is $65.00 per hour. (Summers Aff. ¶ 9.) The other affiant has been practicing for approximately 18 years with ten years of emphasis in employment law. Both affiants swore to the reasonableness of the fees requested in this case. (Summers Aff. ¶ 10; North Aff. ¶ 2.)

In determining the appropriate award of attorney's fees, the Court must determine whether the hourly rate of counsel is reasonable and then whether the number of hours claimed is reasonable. To judge the reasonableness of these figures, the Court will employ the *Johnson* factors which are relevant to the case at bar.

### 1. Reasonableness of Hourly Rates

"Although the determination of a 'market rate' in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely in applicable, . . . the [U.S. Supreme] Court has nonetheless emphasized that market rate should guide the fee inquiry." *Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir.1990) (citing *Blum v. Stenson,* 465 U.S. 886, 895–96 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). In determining the appropriate hourly rate, the Court

has considerable discretion to take into account its experience in setting market value rates in prior fee cases, its general knowledge of the fees charged by attorneys in the area, its experience in the practice of law prior to assuming the bench and its familiarity with counsel's performance in the case.

*Spell v. McDaniel,* 616 F.Supp. 1069, 1101 (E.D.N.C.1985), *aff'd in part,* 824 F.2d 1380 (4th Cir.1987), *cert. denied sub nom., City of Fayetteville v. Spell,* 484 U.S. 1027, 108 S.Ct. 752, 98 L.Ed.2d 765 (1988) (citation omitted). In this case, Plaintiff's counsel have submitted affidavits providing the fees of local attorneys practicing in the area of employment and labor law and, affidavits detailing their experience and the work performed in this case, and a memorandum of law in support of their motion. In determining whether the rates of $130.00, $100.00, and $40.00 for the services of Attorney Hennessy, Attorney Hardee, the paralegal, respectively, are reasonable, the Court will consider *Johnson* factors three, four, five, six, eight, and twelve.

In considering the *skill requisite to perform the legal service properly,* the Court finds that although the litigation was not complex, Plaintiff's counsel are experienced in the field of employment and labor law. Hardee and Hennessy had approximately

one year of experience and approximately six years of experience, respectively, exclusively in this field at the commencement of this action.

Although Plaintiff's counsel did not argue that acceptance of this case *precluded other employment,* the Court judicially notes that this case posed a two-person law firm against a large law firm. The pleadings were numerous and Plaintiff's counsel effectively responded to each of Defendant's motions.

Considering next *the customary fee,* the Court finds that affidavits support the contention that the hourly rates charged for all employees of Hardee & Hennessy were reasonable. (Summers Aff. ¶¶ 9, 10; North Aff. ¶ 2.) The Court also considers its familiarity with the prevailing rates in the community in determining the reasonableness of the rate requested.

 The Court assumes that Plaintiff's attorneys accepted this case on a *contingent fee* basis. However, Plaintiff's attorneys have not stated the fee arrangement in their motion for the award of fees. If counsel accepted the case with the expectation that they would only be paid if Plaintiffs prevailed, the arrangement favors awarding the requested amount because Plaintiff's attorneys accepted the case with the grave possibility that they would not receive any compensation. *Superior Form Builders v. Dan Chase Taxidermy Supply Co.,* 881 F.Supp. 1021, 1028 (E.D.Va.1994).

The Court next considers *the amount involved and the results obtained.* With the award of liquidated damages, Plaintiff Mitchell obtained a judgment of approximately $46,000.00. *Compare Lyle v. Food Lion, Inc.,* 954 F.2d 984 (4th Cir.1992) (awarding $7,380 in fees where Plaintiffs recovered approximately $53,000) *and Fields v. Luther,* No. JH–84–1875, 1988 WL 121791 (D.Md. July 12, 1988) (awarding fees of $7,437.50 where Plaintiffs recovered $2,288.30). Perhaps of greater legal significance was Plaintiff's successful argument that the Loss Prevention Manager's position was not exempt

from the FLSA's requirements for payment of overtime.

Finally, the Court considers *awards in similar cases.* In 1992 in a case of employees seeking unpaid overtime and liquidated damages under the FLSA, the United States Court of Appeals for the Fourth Circuit upheld the district court's finding that $90 per hour was the customary hourly rate. *Lyle,* 954 F.2d at 988. A district court found that in a case involving minimum wage under the FLSA that a rate of $125 per hour was reasonable for an attorney with nine years of experience. *Fields,* 1988 WL 121791, at *4.

Upon consideration of these six *Johnson* factors, the Court concludes that the hourly rate, which Plaintiff's counsel claim, is reasonable.

**2. Reasonableness of Hours Expended**

*Johnson* factors one, two, and twelve apply to the question of whether the hours expended by Plaintiff's counsel were reasonable. The Court first considers *the time and labor required* in this case. Plaintiff's counsel responded to two pre-trial motions, prepared and litigated a six-day trial, responded to several motions for judgment as a matter of law or in the alternative, a new trial, submitted their own such motions, submitted a motion for liquidated damages and prepared for and argued during a hearing on the issue, and submitted a motion for attorney's fees and costs. This work was performed by two attorneys and one paralegal. The Court takes judicial notice of the size differential in law firms involved in this case. Plaintiff's counsel's firm, Hardee & Hennessy, P.C., consists of only two attorneys, the named partners. In contrast, the large firm of Willcox & Savage, P.C. represents Defendant.[4] The Court recognizes the voluminous pleadings in the case and notes Plaintiff's counsel's vigorous responses to Defendant's numerous motions.

The Court next considers *the novelty and difficulty of the questions* presented in this case. The law governing the application of the Fair Labor Standards Act is generally

---

4. The firm letterhead received by the Court in this case listed the names of fifty-five attorneys as members of the firm.

well-settled. This case represented a largely fact-driven inquiry; however, questions regarding the non-exempt status from overtime requirements did present some challenges to counsel on both sides of the case.

Finally, in determining the reasonableness of the hours expended, the Court considers *awards in similar cases.* In *Lyle v. Food Lion, Inc.*, the plaintiffs had to prove that they had worked overtime without compensation and that Food Lion knew of this work. 954 F.2d at 986. Most of the evidence in that case, just as in the case at bar, was the testimony of the plaintiffs. *Id.* In that instance, the district court found that eighty-two hours was reasonably expended by the plaintiffs' attorneys. *Id.* at 988. *Cf. Fields,* 1988 WL 121791, at *4 (finding 59.2 hours to be reasonable in case for minimum wage where attorney had to reconstruct payroll data form testimony and fragmented records). In this case, Plaintiff's attorneys are requesting fees for a combined total of 87.9 hours, expended by the two attorneys and the paralegal. Defendant complains of some duplication of effort in those hours. The Court does not find that these few overlaps were unjustified. The Court finds that the great number of motions in this case and consideration of the three *Johnson* factors weigh in favor of an award for the number of hours requested by Plaintiff's attorneys.

### 3. The Lodestar Figure

 Based upon the above considerations, the Court finds that the following are reasonable rates, hours, and total fees for each of the persons contributing to the attorney work-product for Plaintiff Mitchell:

| Name | Rate | Hours | Total |
|------|------|-------|-------|
| TFH | $130.00 | 59.4 | $7,722.00 |
| SLH | $100.00 | 15.5 | $1,550.00 |
| JPR | $ 40.00 | 13.0 | $ 520.00 |
| **Grand Total** | | | **$9,792.00.** |

### C. Costs

Section 216(b) of the FLSA also provides for an award of costs. The affidavit submitted by Plaintiff's counsel which details the hours expended by the legal personnel also lists costs of $24.20 for photocopies and $148.19 for research through an electronic database for a total of $173.39. Defendant argues that these costs are "inadequately defined." (Def.'s Mem. at 16.) The Court finds the presentation of these costs to be reasonably clear and easily justified by the circumstances of this case. Thus the Court awards costs in the amount of $173.39.

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Plaintiff Mitchell's motion for an award of liquidated damages in the amount of **$22,850.80**, attorney's fees in the amount of **$9,792.00**, and costs in the amount of **$173.39**.

The Clerk is **DIRECTED** to send a copy of this order to counsel for the parties.

It is so **ORDERED**.